Mr. Masucci, you have reserved two minutes for rebuttal, so that gives you eight minutes out of the gate, and if my colleagues are ready, then we will proceed. Good morning, Your Honors. May it please the Court, Thomas Masucci on behalf of the Petitioner. This case, to me, seems obviously focused primarily on the issue of plausibility. And in the many, many years that I've been doing immigration practice, I have to say that I've come across, in my own practice, maybe two or three cases where a credibility finding was — a negative credibility finding was made solely on a plausibility — an implausibility finding. But it certainly can be, right? Oh, it can. The statute acknowledges it explicitly. Absolutely. But it is rare. I think a plausibility, as it's — well, the statute talks about inherent plausibility, and the Court, in describing what a fact finder does when making a plausibility finding, is using common sense. So it's a — I see it as one of the two common-sense grounds for an adverse credibility finding. The other is demeanor, which is much more commonly invoked. But these are two very different — the two issues really revolve around different facts, or procedural facts, I guess. Demeanor is a finding based on the senses. In other words, the fact finder is there, sees the person, listens to the person, body language, intonation. No, I think we get all that.  So I guess the — I guess the issue then boils down to the story presented by the Petitioner is he's been arrested and terrorized in China to the point where he's imprisoned, he's beaten, he's then released on bail, but he still has to report to the police weekly. Correct. And then he bolts and comes to the United States and says they're still looking for him, they're still regularly coming to his house. And yet he then goes to the Chinese consulate and seeks a passport from the very government that he's presumably a fugitive from. And they give it to him. And so, I mean, is that not sufficient? I mean, we might — you might disagree, we might even disagree. But is that at least a sufficient basis for a fact finder to conclude that this is not plausible and therefore not credible? Well, I think it really depends on the record. Because unlike a demeanor finding, there's no record. It's completely subjective. I would respectfully argue that the record looked at cogently would show this — the plausibility finding of the IRJ to not be supported by substantial evidence. But let's just take a piece — there's two pieces to this. One is the fact that he would go to the consulate to get the passport.  And the immigration judge found that implausible. That someone who was really subjected to what he claimed to be subjective wouldn't show up and provide personal information to the government that he feared. That part is not even challenged here. I don't even think you challenge that part of the finding. And then the second part is that, as Judge Sullivan pointed out, you would not get a passport if you were a criminal under Chinese law. And the IJA found that — and again, all we have to find is that a reasonable fact finder would not be compelled to come out the other way. And the government points to testimony from your client that said the Chinese government is considered him a criminal because he failed to appear. That's on page 76 of the record. So your client — I know that there's back and forth about whether this is administrative or whether it's criminal. But even assuming there's some ambiguity about that, there's certainly something in the record to support the IJA concluding that your client was deemed a criminal by China and therefore would not have been issued a passport. So how can we disturb that finding when there's at least some support in the record? MR. SULLIVAN There is some support, Your Honor. But I would say that it's — that's — I don't think that's enough, given the totality of the record. As I pointed out in my brief, I think the question by the immigration judge on page 76, do you believe the police would try to consider you a criminal because of your failure to appear, it's — it's a confusing question and it's, I would say, also a leading question. And —  GOLDSTEIN How about the country conditions evidence on 115 of the record where it says if you engage in illegal religious activities, you can carry potential criminal or administrative penalties? So it's not a purely administrative penalty. There could be criminal penalties. There's some evidence that you could be subject to a criminal penalty for illegal religious activity, right? MR. SULLIVAN It could be. However, if you look at the criminal law of the People's Republic of China, which was submitted between the time of the hearing and the time the judge issued the decision, the judge, again, I think, properly and wisely asked for input around this issue, sensing, I think, that plausibility is a little — it's a difficult thing to prove sometimes. If you look at the criminal law of the People's Republic of China, religion is mentioned in actually only two articles. And Article 251 talks about a functionary who unlawfully deprives a citizen of his or her freedom, religious freedom. That's criminal. The other is in Article 300, whoever forms or uses superstitious sects or secret societies of weird religious organizations or uses superstition to undermine the implementation of the laws, et cetera, et cetera, that's criminal. Whoever uses superstitious sects or secret societies or weird religious organizations to cheat another person and causes death to the person or whoever does those things and — Yeah, but the failure to obey a directive of the police is the most recent thing that would get him in trouble, and that's a separate violation, right? But that would be an administrative violation. It's not a criminal violation. Again, the — Where is that in the record, that a failure to appear when you're on bail and becoming a fugitive is not a criminal violation? Where is that in the record? Your client says otherwise. Your client — again, you say it's an unclear question, but the question was, do you believe the police would try to consider you a criminal because of your failure to appear? The answer, I believe that's what they thought. So we have what your client said. Where is there evidence in the record that a failure to appear is administrative? Well, Your Honor, I would respectfully argue that the client is an expert in terms of the intricacies of — Okay, but it's not in the record to contradict what he said. That's my message. The fact that the penalties — well, the penalties that were inflicted upon him while he was still in China are actually spelled out in the administrative law of China. There's nothing that directly contradicts that, but I would argue that in order for the judge to — for the immigration judge to hang his decision to make an adverse credibility to finding and — finding and deny relief on the — on the presumption that, unsupported by the record, the presumption that a failure to appear is a criminal standard. Does the record reflect why your client wanted the passport? No, it doesn't. It doesn't. All right. Mr. Chiu, you reserve three minutes for rebuttal. Thank you. We'll now hear from Ms. Whitaker or Whitaker? How do you pronounce it? Whitaker. Whitaker, Ms. Whitaker. May it please the Court. My name is Kristin Whitaker, and I'm here on behalf of the Attorney General of the United States. This Court should deny the petition for review. Substantial evidence supports the agency's adverse credibility determination, which is based upon specific and cogent reasons that are tethered to the record that demonstrate, under the totality of the circumstances, that the petitioner is not credible. Now, the immigration judge found the petitioner not credible for two reasons. One, that it was implausible that the petitioner, who claimed to have suffered persecution by the Chinese government, would then — and therefore feared returning to China because of that persecution and the Chinese government's continued interest in him — him — would willingly go to the Chinese consulate to obtain a passport, provide identifying information to the Chinese government to get that passport. And second, that it's implausible that he would be able to obtain that passport without any issue from the Chinese consulate in light of the passport law precluding the issuance of passports to criminals or criminal suspects. And the record evidence demonstrates that the petitioner falls within one of those categories. So if you'd like to go into the different reasons or — I'm sorry, I also didn't hear your question in regards to the passport law. I'm sorry? I'm sorry, I didn't hear your question in regards to the passport law. I ask your adversary, does the record indicate why the petitioner wanted the passport? The immigration judge said at one point that it was his understanding that the petitioner wanted the passport for work authorization. For what? Work authorization purposes. I believe that's reflected in the decision. So if — Do you acknowledge that there's at least some ambiguity as to whether or not illegal religious activity is criminal or administrative in China?  Yes, I do acknowledge that it is ambiguous that even the human rights organizations have been unclear as to whether the government is treating it as an administrative issue or a criminal issue. But ambiguity, it's simply insufficient to show that evidence compels the contrary or the sole conclusion that the petitioner presented a plausible claim. There is ample evidence in the record repeatedly reflecting that adherents, religious followers, not even, say, a leader of a church, have been subjected to criminal punishments. So therefore, the immigration judge made a permissible determination based on the evidence that based on the petitioner's own personal claim as well as his testimony that he was subjected or he was viewed as a criminal, that he should not have been issued a passport by the Chinese consulate. It flies directly in contravention of his entire claim. Does the government believe that the record belies the petitioner's claim that he would — if returned, would be subject to sanctions on account of his religious beliefs? Based on the record and the discrepancies or the implausibilities, the agency has no reason to believe any aspect of the petitioner's claim. Unfortunately, because — I'm sorry, what? No aspect of the petitioner's claim. So you're saying that he was entirely unbelievable because of the passport issue? Unfortunately, because those reasons touched on the very — on his fear and as well as the alleged persecutor's treatment, it goes into the very definition of being a refugee. So there is no claim. So the agency cannot — The State Department records — the State Department analysis of this issue go on and on about the extent of persecution on the basis of religion in China. I mean, you don't dispute that, do you? There is evidence that the Chinese government has mistreated individuals who are involved with religious activities. But we have no — I mean, they recently, a couple of years ago, rounded up Uyghurs who had been living in Xi'an for hundreds of years and took a couple thousand of them to concentration camps. And the records also — State Department records also indicate the persecution of Christians who want to practice Christianity outside of the context of state-sponsored churches. What does the government say about that? The government cannot dispute the country conditions evidence that does reflect that there are abuses in China and that the government — the Chinese government does mistreat individuals who are participating in religious activities. However, again, because this goes into his entire claim, the agency did not find him credible in the — Because what? I'm sorry. It goes into his — I don't understand what you just said. It goes into his entire claim. His claim rests on his being a Christian, attending a Christian house church, and that he would be persecuted on account of that activity, as well as the fact that he did not comply with the government's requirement that he would do the weekly check-ins. Is that plausible or implausible? That it's — which?  What you just said. That it's plausible — Or implausible that if he returned, he would experience his consequences. I have no — I can't guess as to what would happen with him. Well, have you studied the State Department reports? I have. Well, based on the State Department reports, what do you think? Based on a hypothetical, I have no idea. Again, there are different treatments, you know, that — depending on the localities, depending on multiple circumstances. There are people who are part of registered churches. There are people who are able to participate in house churches. There are administrative penalties. There are criminal penalties. There are human rights violations. There are multiple situations. But the case at hand is whether the immigration judge had a permissible view of the evidence and appropriately concluded that the petitioner was not credible. If he's not credible that he was a Christian in the first place. We can't say. Basically, because he is not a credible witness, we can't say any — we can't take at face value anything that he has said before the court, whether he is a Christian, whether he went to a house — A condition of Christians in State Department reports is sort of an empirical matter. The credibility goes to the non-empirical matters as to what happened to him and, you know, what the Chinese government was doing after he left. Those are things where he's the only source of information, right? Yes. And so the credibility finding relates to those things, not to the State Department reports. No, no. But again, we don't know — The IJ basically said, I don't find it credible that these things happened to you, right?  And don't find you credible that you fear the Chinese government. So how can you meet your burden of proof if you can't show that you were persecuted and that you actually fear returning to China and that you fear — There are other cases where we have found — we have upheld agency determinations, have found no future persecution in China because someone got a passport. Correct. So this particular grounds, we have upheld in other cases that you cited in your brief. That is correct. Multiple cases in which this court has found that this is a sufficient reason to conclude that someone is not credible or that it undercuts their claim of persecution. So the immigration judge, although he expressed, you know, caution in rendering this decision, it is supported by the record. And I appreciate the agency's, you know, treatment of this case, that he took a concerted effort, that he had a call-up date, that he asked for more evidence. And he allowed the petitioner to present more evidence and more arguments and gave a reasoned decision that is supported by the record. Now, this court may, you know, if they were looking at this in the first instance, you know, looking at it de novo, may disagree. It might find that it's more in line with administrative penalty. Or you might find that his, you know, reasons are plausible, or his claim in its entirety is plausible. But again, that's not what the standard is before the court. And as, you know, the petitioner has noted that there is contradictory evidence and that you can't point to something that directly contradicts what the immigration judge. The decision should stand. So the court should deny the petition for review. Okay. Thank you, Ms. Whitaker. Thank you. We'll now hear from Mr. Basucci for a few minutes of rebuttal. Very briefly, Your Honor. The, Your Honor raised the issue of the language in the country report, or the religious freedom report, about religious activity being subject to administrative or criminal penalties. That's true. But I would just point out that in the regulations on religious affairs, which was one of the submissions made after the hearing, and that starts on page 147 of the record, chapter 6, which deals with legal liability, it certainly, it appears that there is, it's anticipated that a violation of the regulations on religious affairs could, in fact, entail either criminal or administrative penalties. And so I would respectfully argue that the judge, in light of the fact that this evidence was in the record before he issued his decision, I would say that the judge would have a duty to, insofar as he's hanging his entire denial of this case on this, I would say, presumption of criminality, that he would have a duty to really look into these, look more specifically into the facts of this case as they might result in criminal punishment, as opposed to administrative punishment, as laid out in these regulations. I don't have anything else. Are there any questions? Thank you, sir. All right. Thank you, Mr. Chief. Ms. Whitaker, we will reserve decision.